# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# BATESVILLE DIVISION

**MICKI C. SANDERS**                                                      **PLAINTIFF**

**V.**                           **CASE NO. 1:18-CV-91-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration[1]**                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

**I.**      **Introduction:**

Micki C. Sanders applied for disability insurance benefits and supplemental security income, alleging disability beginning July 21, 2016.[2] (Tr. at 52, 285, 292) Ms. Sanders's claims were denied initially and upon reconsideration. (Tr. 208-14, 222-26) After conducting a hearing, the Administrative Law Judge[3] (ALJ) denied her application. (Tr. at 52-73) Ms. Sanders requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 29-34) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Sanders filed this case seeking judicial review of the decision denying her benefits.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to FED. R. CIV. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Ms. Sanders amended her alleged onset date at the hearing to September 21, 2016. (Tr. 130)

[3] The Honorable Mark Schafer.

## II. The Commissioner's Decision:

The ALJ found that Ms. Sanders had not engaged in substantial gainful activity since her alleged onset date of September 21, 2016. (Tr. 55) At step two of the five-step analysis, the ALJ found that Ms. Sanders had the following severe impairments: fibromyalgia, obesity, mild gastritis, polycystic ovarian syndrome, depression, and anxiety. (Tr. at 55)

After finding that Ms. Sanders's impairments did not meet or equal a listed impairment, the ALJ determined that Ms. Sanders had the residual functional capacity (RFC) to perform sedentary work, with limitations. (Tr. at 58-71) She could only occasionally stoop, crouch, bend, kneel, crawl, and balance; and she could perform frequent handling and fingering in the upper extremities. (*Id*.) Also, mentally, she was limited to work which is simple, routine, and repetitive with supervision that is simple, direct, and concrete; she could frequently interact with co-workers and supervisors and could occasionally have contact with the public. (*Id*.)

The ALJ found that Ms. Sanders could not perform any of her past relevant work. (Tr. at 71) Relying on the testimony of a Vocational Expert (VE), the ALJ found, based on Ms. Sanders's age, education, work experience and RFC, that she could perform work in the national economy, such as a document preparer, table worker, and surveillance monitor. (Tr. at 72) Based on these findings, the ALJ held that Ms. Sanders was not disabled. (Tr. at 73)

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting *Papesh v. Colvin*, 786 F.3d 1126 (8th Cir. 2015)). "Substantial evidence" in this context means enough that "a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* (quoting *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Id.* The Court cannot reverse a decision, however, "merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir.1996)).

### B. Ms. Sanders's Arguments on Appeal

Ms. Sanders claims that the ALJ's decision to deny her benefits is not supported by substantial evidence. Specifically, she argues that the ALJ erred by failing to evaluate the combined effect of her impairments. (#13 at 8-9) She also argues that the ALJ erred at step five by finding that she could perform surveillance systems monitoring. (#13 at 10-12)

#### 1. Relevant Facts

Ms. Sanders was 39 years old at the time of the hearing, and she lived with her husband. (Tr. at 103-04) She had a master's degree and past work as a bank teller,

3

financial management specialist, and film lab technician. (Tr. 71, 104, 106-07) She reported being able to care for her pets, spend time with family, make dinner occasionally, and do some laundry. (Tr. at 121-25, 1052) The medical records indicate that Ms. Sanders suffered from both physical and mental impairments.

    2. Combination of Impairments

Ms. Sanders argues that the ALJ erred by not considering her impairments in combination. She faults the ALJ for failing to state in his opinion that he had evaluated her impairments in combination. (#13 at 9 citing *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994)) This argument is not supported by the record. In his opinion, the ALJ stated that Ms. Sanders "does not have an impairment or *combination* of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 56 (emphasis added)). The ALJ then specifically stated that Ms. Sanders's mental impairments "considered singly and in combination" do not meet a medically equal criteria of Listings 12.04 and 12.06. (Tr. 57)

The ALJ repeatedly stated in his opinion that he had considered "all of the evidence" and the "entire record" in assessing Ms. Sanders's claim of disability. (Tr. 54, 55, 58) In an eleven-page analysis, the ALJ considered Ms. Sanders's subjective complaints of pain, her physical symptoms, her mental symptoms, her activities of daily living, and the more than 500 pages of medical evidence. (TR. 59-70) The ALJ considered all of Ms. Sanders's impairments when assessing her disability claims. See *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (holding that ALJ's synopsis of

4

Martise's medical records and discussion of each of her alleged impairments was evidence of the ALJ's proper consideration of the combined effects of her impairments).

3. Step Five

Ms. Sanders also claims that the ALJ erred at step five of the evaluation process, arguing that his finding that she could perform the job of surveillance systems monitor is not supported by substantial evidence. (#13 at 10) The gist of Ms. Sanders's claim is that the job of surveillance systems monitor has evolved and that the actual requirements of the job exceed her residual functional capacity. As an example, Ms. Sanders points to a scholarly article that concludes that the job of surveillance monitor, as performed by employees of the Transportation Security Administration (TSA), requires lifting and carrying up to 70 pounds and standing for 1-4 hours. (#13 at 11-12)

This argument is unavailing. Even if the Court assumes that surveillance monitoring demands more physical exertion than a person with Ms. Sanders's residual functional capacity could meet, that job was not the only one the ALJ identified. Other jobs included work as a table worker and document preparer. (Tr. 72, 140) Ms. Sanders does not challenge her ability to perform either of these jobs; and there were significant numbers of both jobs available in the national economy. (Tr. 72) The ALJ did not err by relying on the vocational expert's opinion at step five.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Sanders was not disabled. The ALJ considered Ms. Sanders's impairments in

combination and properly relied on the vocational expert's testimony at step five. The decision, therefore, is affirmed; and the case is dismissed, with prejudice.

IT IS SO ORDERED this 2nd day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE